# In the United States District Court for the Southern District of Georgia Brunswick Division

ASHLEE R. DAUGHTRY and
TODD M. GRICHER,

     Plaintiffs,

     v.

TYLER MANNING, DARRIN WATTS,
and JOHN DOE 1 to 6,

     Defendants.

CV 2:20-005

## ORDER

Before the Court is Defendants Tyler Manning and Darrin Watts's motion to dismiss.  Dkt. No. 19.  The motion has been fully briefed and is ripe for review.

## BACKGROUND

This case arises from state criminal prosecutions brought against Plaintiffs Ashlee Daughtry[1] and Todd Gricher stemming from their alleged filing of a fraudulent police report.  For the purposes of ruling on Defendants' Motion to Dismiss, the Court takes Plaintiffs' version of the facts as true.  Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007) ("[W]hen ruling on a motion to dismiss, a court must view the complaint in

---

[1] Defendants point out Daughtry's name is spelled differently in the underlying state court proceedings.  Dkt. No. 19-1 at 1 n.1.  The Court will utilize the spelling reflected in the caption of this case.

the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true."). Additionally, the Federal Rules of Civil Procedure provide that attachments to a complaint generally become "part of the pleading for all purposes," Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss. Gill as Next Friend of K.C.R. v. Judd, 941 F.3d 504, 511 (11th Cir. 2019); see also Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005 ("[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*."); Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (requiring attached documents to be (1) central to the plaintiff's claim and (2) undisputed, meaning the authenticity of the document is not challenged).

On January 12, 2017, Defendants Manning and Watts "unlawfully" took possession of Plaintiff Gricher's pickup truck from his residence in McIntosh County. Dkt. No. 17 ¶ 5. Plaintiffs allege such taking was "not authorized by law or by the order of any Court" and was done "with actual malice" and without probable cause. Id. Plaintiff Gricher contacted the McIntosh County Sheriff's Department to report that his truck had been taken. Id. ¶ 6. Plaintiffs allege that Defendant Manning, without probable cause and without reasonable belief that a crime had been

committed, then secured warrants for the arrest of both Plaintiffs

for allegedly making a false report of a crime.[2]  Id. ¶¶ 7, 8.  As

a result, Plaintiffs Daughtry (McIntosh County State Court Case

No. 2017ST-146) and Gricher (McIntosh County State Court Case No.

2017ST-235) were charged with violating Georgia law.  Id. ¶¶ 9,

11.   In their Second Amended Complaint, Plaintiffs allege the

charges have been dismissed under three, somewhat contradictory,

theories:  "there was not a factual basis for said charges," id.

¶¶ 10, 12; the charges were "terminated in their favor . . . by

operation of law" because more than two terms of the state court

expired without Plaintiffs' cases being heard, id. ¶ 3; and,

alternatively, their cases have been moved to the "Dead Docket"

and have not been brought back into existence within the time

allowed by law, id.  Plaintiffs specifically refer to those cases

in their Second Amended Complaint.  Id. at 3.  Defendants have

attached the case files to their motion.  See Dkt. Nos. 15-2, 15-

3, 15-4, 15-5.  The case files show the cases are not closed.

Indeed, in opposing Defendants' motion to dismiss, Plaintiffs fail

to challenge the authenticity of the exhibits or argue that their

cases are now closed.

Plaintiffs allege Defendants Manning and Watts, as well as

John Does 1 to 6—identified as McIntosh County Sheriff's Deputies-

---

[2] Plaintiffs do not state whether Defendant Manning is a law enforcement
officer.

"engaged  in a campaign to terrorize the Plaintiffs and to force them from McIntosh County by coming to the residence of the Plaintiffs at night," acted "in a threatening and intimidating manner," and "violated the Plaintiffs' rights to feel secure in their home by speaking to them with threatening and offensive words, brandishing fire arms, and otherwise acting in . . . [a] threatening manner."  Id. ¶¶ 4, 18.[3]

Plaintiffs, through their attorney, filed this lawsuit against Defendants Manning, Watts, and Does 1 to 6 on January 29, 2020.  Dkt. No. 1.  Defendants Manning and Watts moved to dismiss, dkt. no. 9, and Plaintiffs filed an amended complaint, dkt. no. 13.  Defendants moved to dismiss a second time, dkt. no. 15, and Plaintiffs filed a Second Amended Complaint, dkt. no. 17, which is now the operative pleading.[4]  Therein, Plaintiffs assert claims for malicious prosecution and deprivation of possession of Plaintiff Gricher's truck.[5]  Plaintiffs also assert Defendants

---

[3] Plaintiffs do not connect this behavior with either the warrant or the truck-taking, and Plaintiffs do not specify the date(s) or time(s) at which such behavior occurred.

[4] An amended pleading "supersedes the former pleading" such that "the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006).

[5] To the extent Plaintiffs assert a claim for violation of their "rights to feel secure in their home," the Court deems those claims abandoned. In their response to Defendants' motion to dismiss, Plaintiffs did not respond to Defendants' argument that such a claim, if asserted, was subject to a two-year statute of limitations applicable to personal injury actions. See Dkt. No. 19-1 at 6; Dkt. No. 21. It is difficult to discern what Plaintiffs' causes of action are. Their response brief in opposition to the motion to dismiss seeks to defend only their

4

acted in bad faith, entitling them to recover reasonable attorney's fees.  Dkt. No. 17 ¶ 19.  Defendants Manning and Watts move to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b).  Dkt. No. 19.

## LEGAL AUTHORITY

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

Importantly, while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage,

---

malicious prosecution and truck-taking claims.  As a result, the Court focuses on those non-abandoned claims.

the same does not apply to legal conclusions set forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The court need not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

Finally, "documents attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6)." Saunders v. Duke, 766 F.3d 1262, 1270 (11th Cir. 2014). Additionally, the Court can consider public records when deciding a motion pursuant to Federal Rule of Civil Procedure 12(b) without converting the motion to a motion for summary judgment.  Universal Express, Inc. v. U.S. S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. Public records are among the permissible facts that a district court may consider.").  Otherwise, the Court does not consider matters outside the pleadings on a motion to dismiss. See, e.g., Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); see also Green v. Waystack, No. 5:18-CV-00042-TES, 2018 WL 3097019, at *1 n.2 (M.D. Ga. June 22, 2018) ("While inclusion of matters outside the pleadings typically converts a Motion to Dismiss to a

Motion for Summary Judgment, the Court need not make this conversion if the attachments are undisputedly authentic and central to the plaintiff's claim. . . . Such is the case here." (citing Fed. R. Civ. P. 12(d); Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005))).

## DISCUSSION

### I.   Plaintiffs' Malicious Prosecution Claims

Plaintiffs each seek $100,000 in actual damages and $250,000 or more in punitive damages from Defendant Manning for malicious prosecution.  Dkt. No. 17 ¶¶ 10, 12, 16, 17.[6]

"A criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action."  O.C.G.A. § 51-7-40.  "The criminal prosecution forming the basis for an action for malicious prosecution must be ended before the right of action for malicious prosecution accrues."  Id. § 51-7-41.  "Among the essential elements of a claim for malicious prosecution are (1) a prosecution instituted maliciously and (2) without probable cause which (3) has terminated favorably to the plaintiff."  J.C. Penney Co. v. Miller, 354 S.E.2d 682, 684 (Ga. Ct. App. 1987).

---

[6] Plaintiff Daughtry also asserts a malicious prosecution claim against Defendant Watts.  Dkt. No. 17 ¶ 10.  Because Plaintiffs have alleged no facts to support a malicious prosecution claim against Defendant Watts, Defendants' motion to dismiss is **GRANTED** as to that claim.

The underlying state court criminal case dockets for both Plaintiffs (the authenticity of which no party has disputed) reflect the cases are still active. Dkt. Nos. 9-4 ("Case Status: Active? Y"), 9-5 (same). The dockets do not show that a dismissal has been entered for either Plaintiff, nor do they show that either case has been closed. Id. The state court records do not reflect any other adjudication concluding the cases. Dkt. Nos. 9-2, 9-3. "Placing a criminal case on the dead docket postpones the prosecution indefinitely[,] 'but (it) may be reinstated any time at the pleasure of the court.'" Courtenay v. Randolph, 188 S.E.2d 396, 397 (Ga. Ct. App. 1972) (quoting Newman v. State, 175 S.E.2d 144, 146 (Ga. Ct. App. 1970)). "Placing a case upon the dead docket certainly constitutes neither a dismissal nor a termination of the prosecution in the accused's favor." Id. at 397–98.

While Plaintiffs assert in their Second Amended Complaint that their criminal cases have been resolved in their favor, the public records clearly show the cases are ongoing. Therefore, Plaintiffs can allege neither that the underlying cases have been resolved in their favor nor that their right of action for malicious prosecution has accrued. Plaintiffs have abandoned any contention to the contrary. Indeed, in their response brief, Plaintiffs failed to challenge that their cases are closed. Accordingly, Plaintiffs' malicious prosecution claims are not yet ripe under Georgia law and must be **DISMISSED.**

## II.  Plaintiffs' Wrongful Taking Claim

### a. Sufficiency of Complaint

Plaintiff Gricher seeks actual damages from Defendants for the wrongful taking of his truck, as well as $250,000 or more in punitive damages.  Dkt. No. 17 ¶ 15.  Reading Plaintiffs' allegations on this Count without the couched legal conclusions and conclusory statements, Plaintiffs allege that on January 12, 2017, Defendants Manning and Watts took possession of Gricher's pickup truck from his residence.  Plaintiffs allege no surrounding circumstances, i.e., whether Plaintiff owned the truck, whether the truck has been returned, whether the taking arose from a personal or legal dispute, whether Defendants are law enforcement or county officials acting in their individual or official capacities, nor any other clarifying background "that allows the court to draw the reasonable inference that [Defendants] are liable for the misconduct alleged."  Ashcroft, 556 U.S. at 678. Plaintiffs' assertion of this claim in no way meets the pleading requirements of Rule 8, let alone Twombly.

More importantly, however, Plaintiffs do not identify under what legal authority they assert this claim.  Indeed, in their motion to dismiss, Defendants have to guess under which statute Plaintiffs' claims are asserted.  Dkt. No. 19-1 ("[T]hese defendants are unsure of the exact nature of Plaintiff's claim, however, it appears to be a claim for trover or conversion or some

deprivation of personal property.").   In their response brief,

Plaintiffs allege "deprivation of property," but they go no further

to clarify their claim.   If anything, Plaintiffs muddy the waters

even further.  For example, Plaintiffs cite Carter v. Butts County,

821 F.3d 1310, 1324 (11th Cir. 2016), as legal authority for a

civil cause of action for the wrongful taking of property.  Carter,

in turn, cites O.C.G.A. § 51-10-1.   That statute provides: "The

owner of personalty is entitled to its possession.  Any deprivation

of such possession is a tort for which an action lies."   § 51-10-

1.   The Court has reviewed a multitude of cases citing § 51-10-1,

and the vast majority of them (including Carter) discuss an action

for conversion.    See, e.g.,  Romano v. Ga. Dep't of Corr.,  693

S.E.2d 521, 524 (Ga. Ct. App. 2010) ("[O.C.G.A. § 51-10-1] embodies

the common law action of trover and conversion." (quoting Grant v.

Newsome, 411 S.E.2d 796 (Ga. Ct. App. 1991))); Truscott v. Garner,

88 S.E.2d 197, 197 (Ga. Ct. App. 1955) ("Trover lies only when

there has been a conversion . . . .").   Plaintiffs themselves,

however, adamantly deny that they assert a conversion claim. Dkt.

No. 21 at 4 ("The Plaintiffs have not alleged that there was

conversion . . . [i]nstead, the Defendants wrongfully took the

property.").

Plaintiffs also cite O.C.G.A. § 51-10-2 and § 51-10-3 in their

response brief.   Section 51-10-2 provides, "Interference with the

mere possession of a chattel, even if the possession is without

title or is wrongful, shall give a right of action to the possessor, except as against the true owner or the person wrongfully deprived of possession." The underlying causes of action for this statute are conversion and trover, as well as trespass. "The action of trespass to personalty is concurrent with the action of . . . conversion, although the two actions are not entirely coextensive. Trespass will doubtless lie for acts of interference with goods." Caldwell v. Church, 802 S.E.2d 835, 841 (Ga. Ct. App. 2017). "The gist of . . . trespass to personal property is the injury done to the possession of the property." Id. In their Second Amended Complaint, Plaintiffs do allege "interference" with property, i.e. the truck, but they do not mention the word "trespass." Similarly, O.C.G.A. § 51-10-3 provides, "Any unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered." Plaintiffs state in their response brief that they have "not alleged that the Defendants damaged [the truck] and ha[ve] not alleged that a theft was committed." Dkt. No. 21 at 4. Thus, it is unclear whether Plaintiffs are asserting a trespass claim or another cause of action.

Despite Plaintiffs' having filed three complaints in this action *and* their being represented by an attorney, the Court is unable to determine under what legal theory Plaintiffs seek relief for the truck taking. Jones v. Mill, No. 7:15-CV-00661-TMP, 2016

11

WL 3548810, at *4 (N.D. Ala. June 30, 2016) ("[T]he court is not required to guess at what [law] the plaintiffs may be relying upon."). If Plaintiffs had simply named the cause of action, set it forth in the manner contemplated by Rule 8, or simply set forth the elements of whatever cause is hinted at along with the facts that support each element, others might understand what cause of action is alleged and, with some light to guide the way, assess whether the cause of action is properly plead. Instead, Plaintiffs tell a broken narrative sprinkled with legal terms of art. When challenged on a motion to dismiss, they disclaim what appears to be a possible cause of action and cite, with little connection to the facts of the case, three separate statutes. The Court concludes Plaintiffs have failed to state a claim for which relief can be granted, and Plaintiffs' truck-taking claim is due to be **DISMISSED**.

### b. Younger Abstention Doctrine

Alternatively, the Court finds that it is precluded from reaching the merits of Plaintiffs' truck-taking claim by application of the Younger abstention doctrine. "*Younger v. Harris*, [401 U.S. 37 (1971)], and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). "The notion of 'comity' includes 'a proper

respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" Id. (quoting Younger, 401 U.S. 44).

**Middlesex Factors**

Before the Court can determine whether the underlying state criminal proceedings preclude the Court from reaching the merits of this case, as contemplated by the Younger abstention doctrine, the Court must consider the factors set out in Middlesex. "As the Middlesex Court framed the issue, 'The question . . . is threefold: first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges.'" 31 Foster Child. v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003).

As to the first factor, the underlying state criminal proceedings are undoubtedly ongoing state judicial proceedings. Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 73 (2013) (stating that state criminal prosecutions are "exceptional" such that they fit within the Younger doctrine). The Court's analysis of the first factor does not stop there, however. "[A]n essential part of the first Middlesex factor in *Younger* abstention analysis is

13

whether the federal proceeding will interfere with an ongoing state court proceeding. If there is no interference, then abstention is not required." 31 Foster Child. v. Bush, 329 F.3d 1255, 1276 (11th Cir. 2003).  "In order to decide whether the federal proceeding would interfere with the state proceeding, we look to the relief requested and the effect it would have on the state proceedings." Id.  "The relief sought need not directly interfere with an ongoing proceeding or terminate an ongoing proceeding in order for *Younger* abstention to be required."  Id.

Here, Plaintiffs are seeking relief that would interfere with the ongoing state criminal proceedings by placing decisions that are now in the hands of the state court under the direction of the federal court.  See id. at 1278; see also Uboh v. Reno, 141 F.3d 1000, 1006 (11th Cir. 1998) ("[A] civil proceeding challenging the grounds on which the prosecution against [plaintiff] had been commenced indirectly would implicate the question of [plaintiff's] guilt; this type of parallel inquiry by way of a civil suit prior to the resolution of a criminal action based on the same set of events is precisely the quandary that Heck prohibits." (citing Heck v. Humphrey, 512 U.S. 477 (1994))).  In prosecuting Plaintiffs for allegedly making false reports, the state court will necessarily have to discuss Defendants' taking of Plaintiffs' truck.  Regarding whether Defendants' taking of Plaintiffs' truck was "wrongful" or without probable cause, this Court and the state

14

court could well differ, issuing conflicting orders.  For example,

if this Court found Defendants liable for taking Plaintiffs' truck

and awarded damages, but the state court found that there was

probable cause or other lawful authority for Defendants to take

the truck, those rulings would be inconsistent, and the federal

civil case would undercut the state criminal case.   Moreover,

Plaintiff has made no argument to the contrary.   The first

Middlesex factor is satisfied.

     The second Middlesex factor is whether the proceedings

implicate important state interests.  "Where vital state interests

are involved, a federal court should abstain 'unless state law

clearly bars the interposition of the constitutional claims.'"

Middlesex, 457 U.S. at 432 (quoting Moore v. Sims, 442 U.S. 415,

426 (1979)).   Here, the state clearly has an interest in

prosecuting false reports of crimes.  See, e.g., Juidice v. Vail,

430 U.S. 327, 335 (1977) (recognizing important state "interest in

the enforcement of its criminal laws").   Further, should the

criminal proceeding involve forfeiture of the truck, the state has

an interest in implementing and maintaining forfeiture procedures

related to the underlying criminal case.  "Courts have consistently

found that the state has an important interest in administering

and enforcing aspects of its criminal and judicial systems."

Patterson v. Miami-Dade Cty., No. 18-20878-CV, 2019 WL 8989840, at

*4 (S.D. Fla. May 23, 2019) (citing Pennzoil Co. v. Texaco, Inc.,

481 U.S. 1, 12-13 (1987)), report and recommendation adopted, No. 18-20878-CIV, 2019 WL 8989841 (S.D. Fla. July 3, 2019). Once again, Plaintiffs have made no argument to the contrary. The second Middlesex factor is satisfied.

As for the third Middlesex factor, Plaintiffs have the burden of establishing that the state proceedings do not provide an adequate remedy for their federal claims. 31 Foster Children, 329 F.3d at 1279. "Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." Middlesex, 457 U.S. at 431. "A federal court 'should assume that state procedures will afford an adequate remedy, in the absence of umambiguous authority to the contrary.'" 31 Foster Children, 329 F.3d at 1279 (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987)). "[T]he relevant question is not whether the state courts can do all that Plaintiffs wish they could, but whether the available remedies are sufficient to meet *Pennzoil*'s requirement that the remedy be adequate." Id. Here, Plaintiffs have failed to argue that the underlying state proceedings do not provide an adequate remedy for their federal claims. Thus, the Court must assume that the state procedures will afford Plaintiffs an adequate remedy. The third Middlesex factor has been met.

16

**Exceptions to the <u>Middlesex</u> Factors**

"Although the *Middlesex* factors have been satisfied, the Court must consider whether any of the limited exceptions to the Younger abstention doctrine apply." <u>Patterson</u>, 2019 WL 8989840, at *4. "[A]bstention is not appropriate when (1) there is evidence that the state proceedings are motivated by bad faith; (2) irreparable injury would occur; or (3) there is no adequate alternative state forum where constitutional issues can be raised." <u>Id.</u> (quoting <u>Dandar v. Church of Scientology Flag Serv. Org., Inc.</u>, 619 F. App'x 945, 948 (11th Cir. 2015)).

"With respect to the first exception, 'a litigant must make a substantial allegation that shows actual bad faith.'" <u>Id.</u> (quoting <u>Dandar</u>, 619 F. App'x at 948). "Actual bad faith occurs where a proceeding 'is brought without a reasonable expectation of obtaining a valid conviction.'" <u>Id.</u> (quoting <u>Watson v. Fla. Judicial Qualifications Com'n</u>, 618 F. App'x 487, 490 (11th Cir. 2015)). Plaintiffs' sweeping conclusory statements aside, there is nothing in the record to suggest that they have been prosecuted in bad faith. <u>See id.</u>

The second exception—irreparable injury—is likewise inapplicable. "A litigant shows irreparable injury if a state law is fragrantly and patently violative of express constitutional prohibitions." <u>Id.</u> (quoting <u>Dandar</u>, 619 F. App'x at 948 (citation and quotation marks omitted)). Again, there is nothing about the

17

underlying state criminal case that Plaintiffs challenge to suggest this.

"The final exception is met when a litigant shows 'extraordinary circumstances' that render the state court incapable of 'fairly and fully adjudicat[ing] the constitutional issues and the plaintiff presents an extraordinarily pressing need for immediate federal equitable relief.'"  Id. (quoting Watson, 618 F. App'x at 490 (citation and quotation marks omitted)).  As already discussed, Plaintiffs have not established that the state proceedings do not provide an adequate remedy for their federal claims, and they have not demonstrated that extraordinary circumstances exist.

If this Court resolved the merits of Plaintiffs' claims, it would undoubtedly interfere with the pending state proceedings. All the elements of the Younger abstention doctrine are met here, and no exception has been established.  Accordingly, as a result of applying Younger, Defendants' motion to dismiss Plaintiffs' truck-taking claim is **GRANTED**.

### III. Plaintiffs' Claims Against John Does 1 to 6

In their Second Amended Complaint, Plaintiffs also name unidentified McIntosh County Sheriff's Deputies, John Does, as defendants.  See Dkt. No. 17.  With the granting of Defendants Manning and Watts's motion to dismiss, only the unidentified Doe defendants remain in the suit.  Fictitious-party pleading is

generally not permitted in federal court.   Richardson v. Johnson,

598 F.3d 734, 738 (11th Cir. 2010).   Even if it were, there would

be no reason to maintain this case.   The only factual allegations

Plaintiffs assert against the Doe defendants is they "engaged in

a campaign to terrorize the Plaintiffs."   Dkt. No. 17 ¶ 18.

However, as Defendants point out in their motion to dismiss, such

a claim is governed by Georgia's two-year statute of limitations.

In their response brief, Plaintiffs make no argument in opposition

to the statute of limitations defense.   See supra n.5.

Accordingly, Plaintiffs provide no ground upon which they can

maintain a suit against the Doe defendants; therefore, the Court

must excuse the Doe defendants and close this case.

### IV.  Punitive Damages and Attorney's Fees

Finally, because Plaintiffs have no remaining underlying

claims against Defendants, Plaintiffs are not entitled to the

requested punitive damages and attorney's fees.

CONCLUSION

Defendants' motion to dismiss, dkt. no. 19, is **GRANTED**.

Plaintiffs' claims against Defendants Manning, Watts, and John

Does 1 to 6 are **DISMISSED without prejudice**.   Plaintiffs are not

entitled to punitive damages or attorney's fees.

**SO ORDERED**, this 30th day of March, 2021.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA